# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

**LAVIN & ASSOCIATES, P.C.**
John J. Lavin, Esq.
JL-0563
184 Main Street
Chester, New Jersey 07930
(908) 888-2508
*Attorneys for Plaintiff*
*Advanced Plumbing & Heating, Inc.*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. ADVANCED PLUMBING & HEATING, INC. | ) ) ) | Civil Action No.: |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **COMPLAINT** |
| BMC CONSTRUCTION, LLC and UNITED STATES SURETY COMPANY | ) ) ) ) | |
| Defendants. | ) ) | |

## COMPLAINT

Pursuant to 40 U.S.C. § 3133(a), Advanced Plumbing & Heating, Inc., appears as the use Plaintiff in the name of the United States of America, by counsel, Elaine Berkenwald of Lavin & Associates, P.C. and alleges as follows:

## GENERAL

1.   At all times mentioned, Plaintiff Advanced Plumbing & Heating, Inc. ("Plaintiff") was, and now is, a corporation doing business in the Township of Manalapan, State of New Jersey, and was, and now is, duly licensed as a contractor by the State of New Jersey to perform work of the type hereinafter described.

2.   Plaintiff is informed and believes and based thereon alleges that defendant BMC

1

Construction, LLC ("BMC") was, at all relevant times mentioned herein, acting as a general contractor providing work and doing business in the City of Orange, State of New Jersey.

3.   Plaintiff is informed and believes and based thereon alleges that defendant United States Surety Company ("USSC") was a licensed surety providing Miller Act payment and performance bonds for federally owed construction projects within the State of New Jersey.

4.   Plaintiff is informed and believes and on that basis alleges, referred to as "the Project," that Plaintiff provided work for Defendant BMC Construction, LLC on a work of improvement described as follows:

   a.   Boiler Upgrade Contract dated February 17, 2015;
        Building Number: C29 McGuire – Dix – Lakehurst, New Jersey; and
        Project Number: N40085-12-G-7429 to 0004.

5.   Plaintiff is informed and believes and thereon alleges that the United States Navy, an agency of Plaintiff, United States of America, is the owner of each of the Projects.

6.   Jurisdiction is conferred on this Court pursuant to 40 U.S.C. § 3133(b)(3)(B), the Miller Act, and venue is proper in the State of New Jersey as the Project work was performed in Lakehurst, New Jersey.

## FIRST CAUSE OF ACTION
### (Breach of Written Contract, Count 1 against BMC)

7.   Plaintiff repeats and realleges each and every of the foregoing paragraphs and incorporates each and every of these paragraphs by this reference as though fully set forth in this cause of action.

8.   Plaintiff is informed and believes, and based thereon alleges, that authorized representatives of "BMC" entered into a general contract with the proper federal agency for the construction of the Project.  Plaintiff is informed and believes, and based thereon alleges, that authorized representatives of BMC entered into a subcontract with for a portion of the work to be

2

performed. In turn, authorized representatives of "BMC" entered into various subcontracts with companies to perform work on the Project.

9. On or about February 17, 2015, authorized representatives of Plaintiff and Defendant, entered into a written contract ("Written Contract") whereby Plaintiff was to preform certain specified labor and provide materials and, in exchange, defendant agreed to pay Plaintiff the sum of $140,000.00, plus additional sums of $35,920.00 for extra work, a total of $175,920.00. Attached hereto as **Exhibit "A"** and incorporated herein by reference as though set forth in full are relevant parts of the Written Contract.

10. From on or about February 18, 2015, Plaintiff performed the work called for under Written Contract and such extra work as was requested by Defendants, as shown in **Exhibit "A"**.

11. Plaintiff has performed all things necessary on its part to be performed under the Written Contract and all changes and modifications thereto, except for those things excused by the actions or omissions of said defendant.

12. Defendant has breached the Written Contract, in that although demand therefor has been made, there is now due, owing and unpaid from Defendant to Plaintiff a sum in excess of $59,920.00 for original contract labor, extra work, materials, and ordinary burden in addition to interest thereon according to proof at time of trial.

13. In addition, Plaintiff was scheduled to perform work within a limited time frame. Plaintiff had a contract right to perform its work within a reasonable time frame and certainly within the original project schedule time frame. Instead, the owner and BMC extended the project well beyond this point in time resulting in extended overhead expense to Plaintiff. Plaintiff seeks a recovery for this extended overhead expense in an amount according to proof at trial, but no less than $15,000.00.

14. For the reasons referenced in the previous paragraph, delay, distribution, unreasonable

inefficiencies and extended overhead expense to Plaintiff (collectively "Compensable Impacts") and claims by Plaintiff, have arisen under the Written Contract.  Plaintiff's Compensable Impacts on the Project are in an amount according to proof at trial.

15. Plaintiff is entitled to recover and seeks its attorney's fees in this action under the referenced contract and by statute.

16. As a result of the foregoing, Plaintiff has been damaged in an amount exceeding $59,920.00 and in an amount according to proof at trial.

WHEREFORE, Plaintiff prays judgment as to all defendants as follows:

1. For judgment according to proof at trial;

2. For interest;

3. For costs of suit incurred herein;

4. For its attorney's fees;

5. For such other and further relief as this court may deem just and proper.

## SECOND CAUSE OF ACTION
### (Book Account, Count Against BMC)

17. Plaintiff repeats and realleges each and every of the foregoing paragraphs and incorporates each and every of these paragraphs by this reference as though fully set forth in this cause of action.

18. In the State of New Jersey, Defendant became indebted to Plaintiff in the agreed sum of $59,920.00 for work and labor rendered for Defendant at its special request and for materials furnished in connection with said work and labor at the Project.

19. An agreed upon account balance was examined and accepted by Plaintiff and Defendant for original contract labor, extra work, materials and ordinary burden in the amount of $59,920.00 for the Project.

20. Although demand therefor has been made, there is now due, owing and unpaid, after

deducting all just credits and offsets from Defendant to Plaintiff the sum of $59,920.00 for contract labor, materials, and ordinary burden in addition to interest thereon according to proof, extended overhead expenses, penalties and attorney fees.

21. As a result of the foregoing, Plaintiff has been damaged in an amount exceeding $59,920.00 and in an amount according to proof at trial.

WHEREFORE, Plaintiff prays judgment as to all defendants as follows:

1. For judgment according to proof at trial;

2. For interest;

3. For costs of suit incurred herein;

4. For its attorney's fees;

5. For such other and further relief as this court may deem just and proper.

### THIRD CAUSE OF ACTION
**(Quantun Meruit Count Against BMC)**

22. Plaintiff repeats and realleges each and every of the foregoing paragraphs and incorporates each and every of these paragraphs by this reference as though fully set forth in this cause of action.

23. At the special instance and request of Defendant BMC, and on its promise to pay the reasonable value thereof, Plaintiff herein performed work and labor and furnished certain materials in connection with the Project.

24. The labor and materials were of the reasonable worth and value of $59,920.00 which includes amounts for extra work and change orders and Compensable Impacts.

25. Although demand therefor has been made, there is now due, owing and unpaid from Defendant to Plaintiff the sum of $59,920.00 for contract labor and materials together with interest thereon according to proof and attorney's fees.  Plaintiff is also owed and seeks reasonable extended overhead compensation as more fully alleged above.

26. As a result of the foregoing, Plaintiff has been damaged in an amount exceeding $59,920.00 and in an amount according to proof at trial.

WHEREFORE, Plaintiff prays judgment as to all defendants as follows:

1.  For judgment according to proof at trial;

2.  For interest;

3.  For costs of suit incurred herein;

4.  For its attorney's fees;

5.  For such other and further relief as this court may deem just and proper.

### FOURTH CAUSE OF ACTION
**(Enforcement of Miller Act Payment Bond, Count Against BMC and United States Surety Company)**

27. Plaintiff repeats and realleges each and every of the foregoing paragraphs and incorporates each and every of these paragraphs by this reference as though fully set forth in this cause of action.

28. Defendant United States Surety Company ("USSC"), as surety, and BMC, as principal, executed a Miller Act Payment Bond (the "Bond") pursuant to the provisions of 40 U.S.C. § 3131 *et seq.* whereby and wherein said defendants undertook to satisfy the claims of those person/entities providing labor and/or materials to the Project. Plaintiff is a member of the class of persons for whose benefit said Bond was issued.

29. Plaintiff provided labor and materials for the improvement of said Project in an amount in value exceeding $175,920.00. Said labor and materials were used in performance of the Written Contract. Moreover, Plaintiff provided services during an unreasonably extended project period. Plaintiff is unpaid a sum in excess of $59,920.00 for original contract labor, materials and ordinary burden which were provided pursuant to the Written Contract.

30. All materials provided and all labor performed by Plaintiff was required to be performed

6

by defendant BMC.

31. Within the time allowed by law Plaintiff, to the extent applicable, provided its Miller Act notice in compliance with the provisions of 40 U.S.C. § 3133(b). A copy of this notice is attached hereto as **Exhibit "C"** and incorporated herein by reference as though set forth in full.

32. Plaintiff has made demand upon defendants to pay the amount of $59,920.00, but all defendants have failed to pay this demand. Consequently, Plaintiff now seeks payment by defendants of $59,920.00.

33. As a result of the foregoing, Plaintiff has been damaged in an amount in excess of $59,920.00 and in an amount according to proof at trial.

34. All said Project material and labor was provided and performed within the State of New Jersey. Said bond issued by USSC was identified as Bond Number 1000971253.

WHEREFORE, Plaintiff prays judgment as to all defendants as follows:

1. For judgment according to proof at trial;

2. For interest;

3. For costs of suit incurred herein;

4. For its attorney's fees;

5. For such other and further relief as this court may deem just and proper.

### FIFTH CAUSE OF ACTION
**(Prompt Payment Act)**

35. Plaintiff repeats and realleges each and every of the foregoing paragraphs and incorporates each and every of these paragraphs by this reference as though fully set forth in this cause of action.

36. Plaintiff has sent invoices for the amount due to BMC starting on or about October 31, 2015.

37. Plaintiff has notified defendant United States Surety Company of its claim and the

7

amount due (**Exhibit B**).

38. Defendants failure to make payment within the appropriate time violates the Prompt Payment Act, 31 U.S.C. 390 3(a)(6).

39. Although demand therefor has been made, there is now due, owing and unpaid from Defendant to Plaintiff the sum of $59,920.00 for contract labor, materials, profit together with interest thereon according to proof and attorney's fees.

40. As a result of the foregoing, Plaintiff has been damaged in an amount in excess of $59,920.00 and in an amount according to proof at trial.

WHEREFORE, Plaintiff prays judgment as to all defendants as follows:

1. For judgment according to proof at trial;

2. For interest;

3. For costs of suit incurred herein;

4. For its attorney's fees;

5. For such other and further relief as this court may deem just and proper.

## SIXTH COUNT
### (Small Business Act)

41. Plaintiff repeats and realleges each and every of the foregoing paragraphs and incorporates each and every of these paragraphs by this reference as though fully set forth in this cause of action.

42. Plaintiff has sent invoices for the amount due to BMC starting on or about October 31, 2015.

43. Plaintiff, Advanced Plumbing & Heating, Inc., is a "small business" as defined in the Small Business Act, 15 U.S.C. § 632(a)(1) - (2)(A).

44. Upon information and belief, defendant BMC has been paid by the United States Department of the Navy more than ninety (90) days prior therefore.

45. Defendant's failure to make prompt payment within ninety (90) days of receipt violates the Small Business Act U.S.C. § 8(d).

WHEREFORE, Plaintiff prays judgment as to all defendants as follows:

6.  For judgment according to proof at trial;

7.  For interest;

8.  For costs of suit incurred herein;

9.  For its attorney's fees;

10. For such other and further relief as this court may deem just and proper.

United States of America, for the use of
Advanced Plumbing & Heating, Inc.


Dated: October 13, 2016

LAVIN & ASSOCIATES, P.C.
Attorneys for Plaintiffs,
Advanced Plumbing & Heating, Inc.

/s/ John J. Lavin
John J. Lavin, Esq.
JL-0563
jlavin@lavinassociates.com
184 Main Street
Chester, New Jersey 07930
Tel.    908 888-2508
Fax.    908 955-7419

# EXHIBIT A

# SUBCONTRACT AGREEMENT

THIS SUBCONTRACT, made this 17 day of February, 2015 by and between BMC Construction, LLC (hereinafter "Contractor"), with an office and principal place of business at 50 So. Center Street, Unit 22, Orange, NJ 07050 and Advanced Plumbing (hereinafter "Subcontractor") with an office and principal place of business at 240 Union Hill Road, Manalapan NJ 07726 (hereinafter collectively "Parties").

## WITNESSETH:

WHEREAS, Contractor and Advanced Plumbing & Heating, Inc. (hereinafter "Owner") have entered into a contract dated 17 February, 2015 for the demolition/installation of plumbing and boiler for C-29 Energy Upgrades (hereinafter "Project"), according to the contract documents listed in Exhibit A attached hereto (hereinafter "Contract Documents") which are made a part of this Subcontract insofar as they apply; and

WHEREAS, Contractor desires to subcontract certain work specified in the Contract Documents, and Subcontractor desires to perform said work at the prices and upon the terms and conditions hereinafter expressed;

WHEREAS, all documents comprising the Contract Documents are available for examination by Subcontractor, and Subcontractor represents that it has read and examined the Contract Documents and fully and completely understands them, or that it has had the full and complete opportunity to do so;

NOW, THEREFORE, in consideration of the mutual agreements herein expressed, the Parties contract, covenant and agree as follows:

## 1. Subcontractor's Work

a.  Subcontractor shall perform all work and shall furnish all supervision, labor, materials, plant, hoisting, scaffolding, tools, equipment, supplies and all other things necessary for the construction and completion of the work described in Exhibit B, and work incidental thereto and reasonably inferable therefrom, in strict accordance and full compliance with the terms of this Subcontract, and to the satisfaction of Contractor and Owner (hereinafter "Work").

b.  With respect to the Work covered by this Subcontract, and except as expressly modified herein, Subcontractor shall have all rights which Contractor has under the Contract Documents, and Subcontractor shall assume all obligations, risks and responsibilities which Contractor has assumed towards Owner, and third parties as applicable, in the Contract Documents, and Subcontractor shall be bound to Contractor in the same manner and to the same extent that Contractor is bound to Owner or said third parties.  In case of a conflict between this Subcontract Agreement and the Contract Documents as incorporated herein, the terms of this Subcontract Agreement shall prevail.  To the extent relevant to their respective scopes of work, Subcontractor shall

ensure that each of its subcontractors and suppliers are bound to the terms of this Subcontract Agreement and the Contract Documents.

c.  Subcontractor shall assume sole responsibility for and shall perform, or cause to be performed, all special inspections and testing required by any applicable building code, regulations, or the Contract Documents relative to the Subcontractor's Scope of Work.  To the fullest extent permitted by law, Subcontractor shall be liable to Contractor for any and all liability, costs, expenses, fines, penalties, and attorney's fees resulting from its failure to perform such duties.

## 2. Payment

a.  Contractor shall pay Subcontractor for performance of the Work, subject to additions and deductions by written change order, the total sum of One Hundred and Forty Thousand Dollars ($140,000.00) (hereinafter "Subcontract Price").

b.  Partial payment shall be due Subcontractor in the amount of 90% of the value of the Work in place, and for which payment has been made to Contractor by Owner.  However, if Contractor does not receive payment from the Owner for Work performed by Subcontractor without the fault of Subcontractor then within a reasonable time, which is agreed to be no less than ninety (90) days after the date payment was due to Contractor by Owner, Contractor shall pay Subcontractor for Work performed in accordance with the Subcontract.  If the Contract Documents allow Contractor partial payments for stored materials, partial payments shall also be due Subcontractor in the amount of 100% of stored materials for which payment has been made to Contractor by Owner.  Within fifteen (15) days of execution of the Subcontract, and prior to submission of any payment application, Subcontractor shall submit a breakdown of the total Subcontract Price in a form and detail acceptable to Contractor.  In the event Contractor disapproves said breakdown, Contractor shall establish a reasonable breakdown which shall serve as the basis for partial payments.

c.  Partial payments shall be due seven (14) days following receipt of approved invoice by Contractor.  No partial payment made under this Subcontract shall be considered an acceptance of the Work in whole or in part.  All material and Work covered by partial payments shall become the property of Contractor, or, if the Contract Documents so provide, the property of Owner immediately upon approval of payment; however, this provision shall not relieve Subcontractor from its responsibility for all Work as provided in Article 4.

d.  Subcontractor shall not apply for payment of any sums on account of Work performed by any sub-contractor or vendor unless it intends to immediately pay such sums to them.  The Subcontractor shall pay any amounts to its sub-contractors or vendors whether for labor performed or materials furnished within thirty (14) days after the Subcontractor receives payment from Contractor which encompasses labor or material furnished by such sub-contractor or vendor.  After the first partial payment hereunder, Contractor shall have the right to withhold any subsequent partial payments until Subcontractor submits evidence satisfactory to Contractor that all previous amounts owed in connection with performance of this Subcontract have been paid.  In

1

addition to the requirements for payment in the Contract Documents, as requested by Contractor, Subcontractor may be required to furnish with any payment application (a) an affidavit stating that all obligations directly or indirectly related to any payment have been paid, (b) a waiver of lien rights and claim rights under any payment surety bond provided by Contractor for all work performed on and material provided to the Project through the date of said payment application, all in a form acceptable to Contractor, and (c) certified copies of payrolls of Subcontractor and its subcontractors.

e.   Final payment, including any retainage withheld under Paragraph 2.b., shall be made after (i) Subcontractor's Work has been accepted by Owner and Contractor, (ii) execution and delivery of a complete and final release of Contractor, Owner and Contractor's surety, if any, and a waiver of lien rights, or a release of any filed liens, in a form acceptable to Contractor from all persons or entities furnishing labor and/or materials in the performance of the Subcontract, (iii) satisfactory proof of payment of all amounts owed by Subcontractor in connection with this Subcontract has been provided, (iv) written consent of Subcontractor's surety has been received, (v) the Subcontractor's Work is complete, (vi) Subcontractor has provided warranties required by the Contract Documents, (vii) submission of such other documents or instruments as Contractor may reasonably require or which are required by the Contract Documents, (viii) production of proof that the insurance coverage required by this Contract and Exhibit E has been procured and is in force and (ix) Contractor has been paid in full by Owner for the Subcontractor's Work. Final payment shall constitute a waiver of all claims by Subcontractor arising out of the Work or Subcontract.

f.   Subcontractor accepts sole and exclusive liability for all taxes and contributions required of Subcontractor by federal, state or local laws or regulations, including, without limitation, the Federal Social Security Act and the Unemployment Compensation Law or similar laws in any state with respect to the employees of Subcontractor and the performance of the Work.

g.   Contractor may withhold from any payment, including final payment, such amount as Contractor, in its discretion, deems reasonably necessary to protect itself against any actual or potential liability (including attorney's fees and costs) or damage directly or indirectly relating to the Subcontract arising from, or alleged to arise from, any act or omission by Subcontractor, regardless of whether or not the Owner has actually withheld payment from the Contractor.

### 3.   Subcontractor's Liability

a.   Subcontractor hereby assumes the entire responsibility and liability for all Work, supervision, labor and materials provided hereunder, whether or not erected in place, and for all plant, scaffolding, tools, equipment, supplies and other things provided by Subcontractor until final acceptance of the entirety of the Work by Owner. In the event of any loss, damage or destruction thereof from any cause, Subcontractor shall be liable therefor, and shall repair, rebuild and make good said loss, damage or destruction at Subcontractor's cost, subject only to the extent that any net proceeds are payable under any builder's

risk property insurance that may be maintained by Owner or Contractor, if any.

b.   Subcontractor shall be liable to Contractor for all costs Contractor incurs as a result of any failure of Subcontractor, or any of its suppliers or subcontractors of any tier, to perform.

c.   To the fullest extent permitted by law, the Subcontractor shall indemnify, defend, and hold harmless the Contractor, Owner and their respective officers, directors, employees and agents ("Indemnified Parties") from and against all claims, damages, demands, losses, expenses, fines, causes of action, suits or other liabilities, (including all costs reasonable attorneys' fees, consequential damages, and punitive damages), arising out of or resulting from, or alleged to arise out of or arise from, the performance of Subcontractor's Work under the Subcontract, whether such claim, damage, demand, loss or expense is attributable to bodily injury, personal injury, sickness, disease or death, or to injury to or destruction of tangible property, including the loss of use resulting therefrom; but only to the extent attributable to the negligence of the Subcontractor or any entity for which it is legally responsible and; regardless whether the claim is presented by an employee of Subcontractor. Such indemnity obligation shall not be in derogation or limitation of any other obligation or liability of the Subcontractor or the rights of the Contractor contained in this Subcontract or otherwise. This indemnification shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under any workers' compensation acts, disability benefits acts or other employee benefits acts. This indemnification shall be in addition to any indemnity liability imposed by the Contract Documents, and shall survive the completion of the Work or the termination of the Subcontract.

d.   Subcontractor's assumption of liability is independent from, and not limited in any manner by, the Subcontractor's insurance coverage obtained pursuant to Article 4, or otherwise.

### 4.   Subcontractor's Insurance

a.   Prior to commencing the Work, Subcontractor shall procure, and thereafter maintain, at its own expense, until final acceptance of the Work or later as required by the terms of the Subcontract, insurance coverage required by the Contract Documents and this Subcontract. At a minimum, the types of insurance and minimum policy limits specified in Exhibit E shall be maintained in a form and from insurers acceptable to Contractor. All insurers shall have at least an A- (excellent) rating by A.M. Best and be qualified to do business in the jurisdiction where the Project is located.

### 5.   Time of Performance

a.   Subcontractor will commence Work when directed by Contractor and Subcontractor will proceed with the Work in a prompt and diligent manner in accordance with the Project Schedule, attached hereto as Exhibit D, which may be amended from time to time by Contractor. **Time is of the essence of this Contract.** If the Subcontractor shall neglect, fail, or refuse to complete the Work within the

time specified for Substantial Completion in the Contract, then the Subcontractor does hereby agree, as a part consideration for the awarding of this Contract, to pay to the Contractor, as liquidated damages and not as a penalty, the sum of $250.00 per day for each calendar day beyond the dates set forth in the Agreement that the Subcontractor fails to achieve Substantial Completion for the Project. The said amount is fixed and agreed on by and between the Subcontractor and the Contractor because of the impracticability and extreme difficulty of fixing and ascertaining the true value of the damages which the Contractor will sustain by failure of the Subcontractor to complete the Work on time, such as loss of revenue, service charges, interest charges, delays caused by other construction activities of Contractor by failure to perform this Contract, and other damages, some of which are indefinite and not susceptible of easy proof, said amount is agreed to be a reasonable estimate of the amount of damages which the Contractor will sustain and said amount shall be deducted from any monies due or that may become due to the Subcontractor, and if said monies are insufficient to cover said damages, then the Subcontractor shall pay the amount of the difference.

b.   Subcontractor shall submit a detailed schedule for performance of the Subcontract, in a form acceptable to Contractor, which shall comply with all scheduling requirements of the Contract Documents and with Paragraph 6.a. above.  Contractor may, at its sole discretion, direct Subcontractor to make reasonable modifications and revisions in said schedule.

c.   Subcontractor will coordinate its Work with the work of Contractor, other subcontractors, and Owner's other builders, if any, so no delays or interference will occur in the completion of any part or all of the Project.

6.   **Changes and Claims**

a.   Contractor may, at any time, unilaterally or by agreement with Subcontractor, and without notice to the sureties, make changes in the Work.  Any unilateral order, or agreement, under this Paragraph 6.a. shall be in writing, unless an emergency requires Subcontractor to proceed without a written order.  Subcontractor shall immediately perform the Work as changed without delay.

b.   Subcontractor shall submit in writing to Contractor, along with substantiating evidence deemed satisfactory by Contractor, any claims for adjustment in the Subcontract Price, schedule or other provisions of the Subcontract claimed by Subcontractor for changes directed by Owner, or for damages for which the Owner is liable, or as a result of deficiencies or discrepancies in the Contract Documents ("Owner Claims"), at least five (5) business days prior to the time specified in the Contract Documents, otherwise such claims are waived.  Contractor shall process said Owner Claims according to the provisions of the Contract Documents so as to protect the interests of Subcontractor and others including Contractor.  Subcontract adjustments shall be made only to the extent that Contractor receives relief from or must grant relief to Owner and then only based on Subcontractor's allocable share of such relief.  Subcontractor's allocable share shall be determined by Contractor, after allowance of Contractor's normal overhead, profit and

other interest in any recovery, by making a reasonable apportionment, if applicable, among Subcontractor, Contractor and other subcontractors or persons with interests in the adjustment.  In no event shall the Contractor become or be liable to the Subcontractor on account of any such Owner Claims in excess of the amount actually received by Contractor from Owner on account of such claim.  It is expressly acknowledged that receipt of payment by Contractor from Owner on account of any such Subcontractor's Owner Claims is an express condition precedent to any obligation of Contractor to pay such claims.  This paragraph will also cover other equitable adjustments or other relief allowed by the Contract Documents.

c.   For changes ordered by Contractor independent of Owner or the Contract Documents, Subcontractor shall be entitled to an equitable adjustment of the Subcontract Price or Project Schedule, or both, to the extent that impact can be substantiated to the Contractor's satisfaction.

d.   Pending resolution of any claim, dispute or other controversy, nothing shall excuse Subcontractor from proceeding with prosecution of the Work.

7.   **Failures to Perform**

a.   If, in the opinion of Contractor, Subcontractor shall at any time (1) refuse or fail to provide sufficient properly skilled workmen or materials of the proper quality, (2) fail in any respect to prosecute the Work according to the Project Schedule, (3) stop, delay, or interfere with the work of Contractor or any other builder or subcontractor, (4) fail to comply with all provisions of this Subcontract or the Contract Documents as incorporated herein, (5) be adjudged a bankrupt, or make a general assignment for the benefit of its creditors, (6) have a receiver appointed, or (7) become insolvent or a debtor in reorganization proceedings, then, after serving three (3) days written notice, unless the condition specified in such notice shall have been eliminated with such three (3) days, the Contractor may at its option (i) without voiding the other provisions of the Subcontract and without notice to the sureties, take such steps as are necessary to overcome the condition, in which case the Subcontractor shall be liable to Contractor for the cost thereof; (ii) terminate for default the Subcontractor's right to proceed under the Subcontract, or (iii) seek specific performance of Subcontractor's obligations hereunder, it being agreed by Subcontractor that specific performance may be necessary to avoid irreparable harm to Contractor and/or Owner.

b.   In the event of termination for default, Contractor may, at its option, (1) enter on the premises and take possession, for the purpose of completing the Work, of all materials and equipment of Subcontractor, (2) require Subcontractor to assign to Contractor any or all of its subcontracts or purchase orders involving the Project; or (3) complete the Work either by itself, or through others, by whatever method Contractor may deem expedient.  In case of termination for default, Subcontractor shall not be entitled to receive any further payment until the Work shall be fully completed and accepted by Owner.

c.   If the Owner terminates any portion of the prime agreement with Contractor which includes the Work, then the Subcontract shall be similarly terminated and Subcontractor shall be entitled to such relief as

3

may be granted to Contractor on Subcontractor's behalf consistent with Articles 1, 7 and 8 of the Subcontract.

d.   In the event of termination for default or any other reason, the provisions of this Subcontract concerning the subcontractor's liability, indemnity and insurance obligations shall remain in full force and effect in conformance with and for the period(s) specified in those provisions.

## 8.   Settlement of Disputes

a.   In case of any dispute between Contractor and Subcontractor, due to any Owner Claims, any act or omission of Owner or any entity for which the Owner is responsible, or involving the Contract Documents, Subcontractor agrees, to the same extent that Contractor is bound to Owner, to be bound by the terms of the Contract Documents, and by any and all preliminary and final decisions or determinations made thereunder by the party, board or court so authorized in the Contract Documents or by law, whether or not Subcontractor is a party to such proceedings. In case of such dispute, Subcontractor will comply with all provisions of the Contract Documents allowing a reasonable time for Contractor to analyze and forward to Owner any required communications or documentation. Contractor will, at its sole option (1) present to Owner, in Contractor's name, or (2) authorize Subcontractor to present to Owner, in Contractor's name, all of Subcontractor's claims and answer Owner's claims involving Subcontractor's Work, whenever Contractor is permitted to do so by the terms of the Contract Documents. If such dispute is prosecuted or defended by Contractor, Subcontractor agrees to furnish all documents, statements, witnesses, and other information required, and to pay for all costs, including attorneys' fees, incurred in connection therewith. The Subcontract Price shall be adjusted by Subcontractor's allocable share determined in accordance with Article 7 hereof.

b.   With respect to any controversy between Contractor and Subcontractor not involving the Owner, the Contract Documents or an Owner Claim, Contractor shall issue a decision which shall be final and binding unless, within five (5) days of receipt, the Subcontractor files a notification in writing of its intent to litigate the controversy in accordance with Paragraph 9.d. Notification of any such claim under this Paragraph 9.b. must be submitted in writing within ten (10) days of Subcontractor's awareness of the facts underlying the claim. Failure of Subcontractor to submit timely its notice of claim or notice of intent to litigate shall constitute an absolute bar and complete waiver of Subcontractor's right to recover on account of such claim.

c.   Subject to Subcontractor's compliance with such notice requirements, either party may request non-binding mediation of non-Owner Claims with a mediator to be agreed upon by the parties, and shall pursue resolution of their dispute in good faith through such mediation. If the Parties cannot agree upon a mediator, they shall submit the dispute to the American Arbitration Association for non-binding mediation pursuant to its rules. Any such mediation shall take

place in the place where the Project is located. Any mediation costs shall be equally borne by the parties.

d.   Anything to the contrary in the Contract Documents notwithstanding, any controversy between Contractor and Subcontractor not involving Owner, the Contract Documents, or an Owner Claim and which is not amicably resolved by the Parties will be submitted to either _____(1) a court of competent jurisdiction in the State of New Jersey; or, (2) _____ arbitration pursuant to the Construction Industry Rules of the American Arbitration Association to be conducted at the place where the Project is located. The prevailing party in any litigation/ arbitration shall be entitled to recover reasonable attorney's fees, costs and expenses incurred in connection with the litigation.

## 9.   Termination for Convenience

Contractor shall have the right to terminate this Subcontract, in whole or part, for its own convenience and regardless whether there is a termination of Contractor's contract with Owner, by providing Subcontractor with a written notice of termination, to be effective upon receipt by Subcontractor. If the Subcontract is terminated for convenience, the Subcontractor shall be paid the amount representing costs which are due from the Owner for its Work, as provided in the Contract Documents, after payment therefore by the Owner to Contractor. The Subcontractor's remedy under this Article 13 shall be exclusive and in no event will Subcontractor be entitled to recovery of any anticipatory profits or damages.

## 10.   Assignment

a.   Subcontractor shall not subcontract any portion of the Work or the Subcontract and shall not assign or transfer this Subcontract, or funds due hereunder, without the prior, written consent of Contractor and Subcontractor's surety.

b.   Contractor may assign the Subcontract without prejudice to its rights under the Subcontract or any surety bond issued with respect thereto.

## 11.   Safety

The Contractor makes no representation with respect to the physical conditions or safety of the Project Site. The Subcontractor shall, at its own expense, preserve and protect from injury its employees engaged in the performance of the Work and all property and persons which may be affected by its operations in performing the Work. The prevention of accidents to workers engaged in the Work and others affected by the Work is the responsibility of the Subcontractor and Subcontractor shall comply with all federal, state, labor and local laws, regulations and codes concerning safety as shall be applicable to the Work and to the safety standards established by Contractor during the progress of the Work. Subcontractor shall indemnify, defend and hold harmless Contractor, Owner and their respective officers, directors, agents and employees from any costs, expenses or liability (including attorneys' fees, fines or penalties) resulting from failure of Subcontractor to comply with the aforesaid laws, regulations and codes.

4

12.  Bonds

Within ten (10) days of execution of this Subcontract, the Subcontractor shall __ or shall not  X furnish at Subcontractor's expense a Performance and Payment Bond each in the full amount of this Subcontract and in accordance with the forms attached as Exhibit C. The bond form and the surety shall be acceptable to the Contractor. Failure to deliver such bonds is a material breach of this Subcontract.

13.    Clean-up

Subcontractor shall clean up the areas used by Subcontractor for its Work on a daily basis and remove from the Project site, or to a specified location on the Project site as directed by Contractor, and in a manner that will not impede either the progress of the Project or of other trades, all rubbish, waste material, excess material and debris resulting from the Work.

14. Governing Law

This Subcontract shall be governed by and construed in accordance with the laws of the State of New Jersey without regard to conflict of law principles.

15.  Presumption Arising From Authorship

Both Parties have had the opportunity to review this Subcontract with counsel and negotiate before signing this Subcontract.  Therefore, there will be no presumption for or against either of the Parties arising out of the drafting of the Subcontract.

IN WITNESS WHEREOF, the Parties, by their duly authorized representatives, have hereunto executed this Subcontract, on the day and year first above written.

Exhibits:

A -   Contract Documents
B -   Scope of Work
C -   Bonds
D -   Project Schedule
E -   Insurance Provisions

SUBCONTRACTOR:

By:        _Hani Riza_

Name:   _Hani Riza_

Title:    _Presd_

Date:    _2/12/2015_

WITNESS:

CONTRACTOR:

By:        _Gwendvere Motley_

Name:   _Gwendvere Motley_

Title:    _Managing Member_

Date:    _2/17/2015_

WITNESS:

Release: 2/2008

5

**EXHIBIT B**
**SCOPE OF WORK**

Job Name: Boiler upgrade for Building C29

Scope of work based upon the following:

1) Per specification section 23-5200
2) Complete project drawings as listed M101
3) Complete project specification as listed above building C29
4) Plumbing work as outlined in both specifications & drawings
5) Equipment listed in M101 provided by BMC - other miscellaneous material provided by Advance Plumbing & Heating provide a fully functional system per drawing.
6) Demo existing boiler and related piping.
7) Steam header and related plain end piping.


Note:
To be provided by BMC:
A) All three boilers with all accessories
B) Water softener
C) Chemical feeder
D) RPZ
E) Condensating return unit
F) Flu pipe for boiler
G) All boiler controls and panels

7

# Exhibit E: Insurance Provisions

## SUBCONTRACTOR'S INSURANCE

Before commencing the Subcontract work, and as a condition precedent to any payment, the Subcontractor shall purchase and maintain insurance in conformance with the provisions contained in this Exhibit. This insurance will provide a defense and indemnify the Contractor, but only with respect to liability for bodily injury, property damage and personal and advertising injury caused in whole or in apart by the Subcontractor's acts or omissions or the acts or omissions of those acting on the Subcontractor's behalf.

Proof of this insurance shall be provided to the Contractor before the work commences, as set forth below.   To the extent that the Subcontractor subcontracts with any other entity or individual to perform all or part of the Subcontractor's work, the Subcontractor shall require the other Sub-Subcontractors to furnish evidence of equivalent insurance coverage, in all respects, terms and conditions as set forth herein, prior to the commencement of work by the Sub-Subcontractor. In no event shall the failure to provide this proof, prior to the commencement of the work, be deemed a waiver by the Contractor of Subcontractor's or the Sub-Subcontractor's insurance obligations set forth herein.

In the event that the insurance company(ies) issuing the policy(ies) required by this exhibit deny coverage to the Contractor, the Subcontractor or the Sub-Subcontractor will, upon demand by the Contractor, defend and indemnify the Contractor at the Subcontractor's or Sub-Subcontractor's expense.

## MINIMUM LIMITS OF LIABILITY

The Subcontractor must maintain the required insurance with a carrier rated A- or better by A. M. Best.  The Subcontractor shall maintain at least the limits of liability as set forth below:

Commercial General Liability Insurance
$1,000,000 Each Occurrence Limit (Bodily Injury and Property Damage)
$2,000,000 General Aggregate
$2,000,000 Ongoing & /Completed Operations Aggregate
$1,000,000 Personal and Advertising Injury Limit

Contractor's Pollution Liability Insurance (Required for Mold or Environmental Remediation Work)
$1,000,000 Each Occurrence Limit (Bodily Injury and Property Damage)
$2,000,000 General Aggregate

Business or Commercial Automobile Liability Insurance
$1,000,000 combined single limit per accident

Workers' Compensation and Employers' Liability Insurance
$100,000 Each Accident
$100,000 Each Employee for Injury by Disease
$500,000 Aggregate for Injury by Disease

10

Excess or Umbrella Liability (to overlay Employer's Liability, Automobile Liability and Commercial General Liability coverage)
$1,000,000 occurrence/aggregate

**Additional Insured Status and Certificate of Insurance**

The Contractor and Owner, along with their respective officers, agents and employees, shall be named as additional insureds for Ongoing Operations and Products/Completed Operations on the Subcontractor's and any Sub-Subcontractor's Commercial General Liability Policy, which must be primary and noncontributory with respect to the additional insureds. This insurance shall remain in effect as set forth below, in the "Continuation of Coverage" provision.

It is expressly understood by the parties to this Contract that it is the intent of the parties that any insurance obtained by the Contractor is deemed excess, non-contributory and not co-primary in relation to the coverage(s) procured by the Subcontractor, the Sub-Subcontractor or any of their respective consultants, officers, agents, subcontractors, employees or anyone directly or indirectly employed by any of them, or by anyone for whose acts any of the aforementioned may be liable by operation of statute, government regulation or applicable case law.

To the fullest extent permitted by applicable state law, a Waiver of Subrogation Clause shall be added to the General Liability, Automobile and Workers Compensation policies in favor of Contractor and Owner, and this clause shall apply to the Contractor's and Owner's officers, agents and employees, with respect to all projects during the policy term.

Prior to commencement of work, Subcontractor shall submit a Certificate of Insurance in favor of Contractor and an Additional Insured Endorsement (in a form acceptable to the Contractor) as required hereunder. The Certificate shall provide for thirty (30) days' notice to Contractor for cancellation or any change in coverage. Copies of insurance policies shall promptly be made available to the Contractor upon request.

NO LIMITATION ON LIABILITY

With regard to any and all claims against the additional insured by any employee of the Subcontractor, anyone directly or indirectly employed by the Subcontractor or anyone for whose acts the Subcontractor may be liable, the indemnification obligation shall not be limited by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under workers' compensation acts, disability benefit acts or other employee benefit acts.

CANCELLATION, RENEWAL AND MODIFICATION

The Subcontractor shall maintain in effect all insurance coverages required under this Agreement at the Subcontractor's sole expense and with insurance companies acceptable to the Contractor until final completion and acceptance of the entirety of the Subcontract Work; or longer if so provided in the Agreement such as with respect to completed operations coverage.

11

Certificates of insurance showing required coverage to be in force must be delivered to the Contractor prior to commencement of the Subcontract Work. In the event the Subcontractor fails to obtain or maintain any insurance coverage required under this Agreement, this shall be considered a material breach of the contract, entitling the Contractor, at its sole discretion, to purchase such equivalent coverage as desired for the Contractor's benefit and charge the expense to the Subcontractor, or, in the alternative, exercise all remedies otherwise provided in the contract, or as permitted by law or equity.

## CONTINUATION OF COVERAGE

The Subcontractor shall continue to carry Completed Operations Liability Insurance for at least three (3) years after either ninety (90) days following Substantial Completion of the Work or final payment to the Contractor, whichever is later. The Subcontractor shall furnish the Contractor evidence of such insurance at final payment and in each successive year during which the insurance coverage must remain in effect.

## ACKNOWLEDGMENT OF REFERRAL OF THIS PROVISION TO THE SUBCONTRACTOR'S INSURANCE AGENT OR BROKER

The Subcontractor represents that it has provided a copy of the "Insurance Provisions" to his insurance agent and/or broker, and that the Subcontractor has instructed the agent/broker to provide insurance in full compliance with the terms and conditions herein.

The Contractor and Subcontractor hereby acknowledge that this Exhibit is considered a material term of the Subcontract.

Gwenevere Motley, Managing Member
BMC Construction, LLC

On Behalf of the Subcontractor
ADVENC PH INC

Date: 2/17/2015

Date: 2/17/215

Release: 2/2008

12

# ADVANCE PLUMBING & HEATING, INC.
## 240 UNION HILL ROAD
## MANALAPAN N.J. 07726
## TEL: 732-786-1311
## FAX: 732-786-8838

September 26, 2016

Building # C29

Exeter work approve buy project manager  and Q .C
Alen Tacko

1- Received boiler section and assemble for 3 boiler at job site
2 assistant  $52.00 an hour X80 hours        $8320.00
1 pipe fitter $80.00  an hour X80 hours      $6400.00

$14,720.00

2- secondary law water cut off S/B/ BMC install by Advance
government inspector reject
BMC supply the correct law water cut off install by Advance

2 assistant  $52.00 an hour X 45 hours      $4680.00
1 pipe fitter $80.00  an hour X45 hours      $3600.00

$8,280.00

3- secondary gas regulator was required by navy inspector supply by BMC
install by Advance
1 assistant $52.00 an hour X40.00 hours      $2,080.00
1 pipe fitter $80.00 an hour X40.00 hours     $3,200.00

$5,280.00

4- install three flowserve series 36 actuator on three boilers was requested
by navy inspector
supply by BMC install by Advance
1 assistant $52.00 an hour X20.00 hours     $1,040.00
1 pipe fitter $80.00 an hour X20.00 hours     $1,600.00

        $2,640.00

5- re pipe 2" return line to chapel requested by navy inspector

total labor and materiel     $5,000.00

Total  extra work     $35,920.00

# EXHIBIT B



# LAVIN
& ASSOCIATES P.C.

October 5, 2016

**Via Federal Express**
Gemma B. Fendler, Attorney – in – fact
United States Surety Company
20 West Aylesbury Road
Timonium, MD 21094-5605

   **Re:** **United States Surety Company Bond**
     **Principal: BMC Construction, LLC.**
     **Obligee: NAVFAC Mid Atlantic Public Works Department Earle**
     **Bond Number: 1000971253**

Dear Ms. Fendler,

   Please be advised that this office represents the subcontractor, Advanced Plumbing & Heating, Inc., with regard to the above captioned bond. The bond insured a project in building number C29, McGuire – Dix – Lakehurst, New Jersey, Project Number N40085-12-G-7429, task order 2004. This letter is to notify you that our client, Advanced Plumbing & Heating, Inc., has not been paid for the above captioned energy upgrade naval contract. You are hereby notified that our client, Advanced Plumbing & Heating, Inc., is owed a balance from the contractor insured BMC Construction, LLC., in the amount of $59,920.00. Please be advised that we claim payment from the above captioned bond for our client.

     Very truly yours,

     Elaine Berkenwald
     eberkenwald@lavinassociates.com

EB/ssb
Cc: Advanced Plumbing & Heating, Inc. (via regular mail only)
   Public Works Department Earle (via regular mail only)
   Adam Ginther (via regular mail only)